UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANNA L. DIAMOND,

    Plaintiff,

v.                                                                                                          Case No. 1:17-cv-576
                                                                                                           Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant,

_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB).

Plaintiff alleged a disability onset date of November 15, 2013. PageID.246. Plaintiff identified her disabling conditions as no thyroid, bipolar, and depression. PageID.250. Prior to applying for DIB, plaintiff completed the 12th grade, had additional job training in office administration, and had past employment as a hotel housekeeper and a debt collector. PageID.251. An Administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on April 14, 2016. PageID.46-56. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

1

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. § 405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence de novo, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §404.1505; *Abbott v. Sullivan*, 905 F.2d 918, 923

(6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

II.  ALJ's DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of November 15, 2013, and met the insured status requirements of the Social Security Act through September 30, 2018. PageID.48.

At the second step, the ALJ found that plaintiff had severe impairments of: status post-surgery to remove thyroid gland; status post abdominal surgery for lysis adhesions; fatigue syndrome; attention deficit hyperactivity disorder (ADHD); and anxiety ("rule out" a personality disorder). PageID.48. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.49.

The ALJ decided at the fourth step that, "[a]fter careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) limited to simple work with one to two steps with occasional public contact and may not perform fast paced work." PageID.50.

The ALJ also found that plaintiff is capable of performing her past relevant work as a housekeeper, work which does not require the performance of work-related activities precluded by plaintiff's residual functional capacity (RFC). PageID.54.

However, the ALJ continued to the fifth step, stating that in the alternative, plaintiff could perform a significant number of unskilled jobs at the light exertional level in the national economy. PageID.54-55. Specifically, the ALJ found that plaintiff could perform unskilled, light work in the national economy such as mail sorter (while the ALJ identified ",000" jobs, the vocational expert testified that 18,000 such jobs existed), office helper (35,000 jobs), and information clerk (28,000 jobs). PageID.42, 55-56. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from November 15, 2013 (the alleged onset date) through April 14, 2016 (the date of the decision). PageID.55-56.

### III. DISCUSSION

Plaintiff set forth four issues (with sub-issues):

**A. The ALJ failed to follow the applicable law when he found plaintiff's bipolar disorder/depression, headaches and obsessive compulsive disorders were not severe impairments, warranting a remand.**

Plaintiff contends that the ALJ erred by failing to find that her bipolar disorder, depression, obsessive compulsive behavior, and headaches were severe impairments. A "severe impairment" is defined as an impairment or combination of impairments "which significantly limits your physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). Upon determining that a claimant has one severe impairment the ALJ must continue with the remaining steps in the disability evaluation. *See Maziarz v. Secretary of Health & Human Services*, 837 F.2d 240, 244 (6th Cir. 1987). Once the ALJ determines that a claimant suffers from a severe impairment, the fact that the ALJ failed to classify a separate condition as a severe impairment does not constitute reversible error. *Maziarz*, 837 F.2d at 244. However, an ALJ should consider such non-severe conditions in determining the claimant's residual functional capacity. *Id. See Hedges v. Commissioner of Social Security*, 725 Fed. Appx. 394, 395 (6th Cir. 2018) ("[O]nce an ALJ finds that a claimant has at least one severe impairment at step two of the disability analysis, the ALJ must then 'consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe' in evaluating the claimant's ability to work in step four. 20 C.F.R. § 404.1545(e)[.]"). "The fact that some of [the claimant's] impairments were not deemed to be severe at step two is therefore legally irrelevant." *Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008).

As discussed, the ALJ found that plaintiff had severe impairments of status post-surgery to remove thyroid gland, status post abdominal surgery for lysis adhesions, fatigue

5

syndrome, ADHD, and anxiety. PageID.48. In rejecting plaintiff's claims regarding her other conditions, the ALJ stated as follows:

> The record reflects other impairments that the undersigned does not consider "severe" because the evidence does not suggest that they have resulted in significant limitations on the claimant's ability to perform basic work activities. These impairments include migraines, asthma, tobacco use, lymphadenopathy, history of MRSA infection, and obsessive compulsive disorder (Exhibit 4F/28; 9F/11). In January 2016, the claimant reported daily headaches not improved on Topamx [sic]. The claimant was assessed with mixed headache syndrome, but notably her neurological examination was unremarkable. The claimant was advised regarding headache hygiene which included proper diet, avoiding caffeine, no meal skipping, smoking cessation, and stress reduction techniques. The record does not suggest the claimant has required inpatient hospitalizations or emergency medical treatment for her asthma symptoms. Rather, that they are controlled on medications. The claimant testified her MRSA is controlled with antibiotic treatment. The record also does not suggest the claimant is engaged in direct treatment for her obsessive compulsive disorder which includes picking at her skin. Accordingly, the undersigned has determined the aforementioned impairments are nonsevere as they have not resulted in significant limitations on her ability to perform basic work activities.

PageID.48-49.

Based on this record, it appears that the ALJ considered plaintiff's non-severe impairments of headaches and obsessive compulsive disorder (OCD). As discussed, *infra*, the ALJ considered plaintiff's OCD when he explicitly reviewed the listing for that condition. The ALJ, however, did not address plaintiff's diagnosis of bipolar disorder, despite the fact that plaintiff identified bipolar disorder on her disability report and was diagnosed with this condition as early as May 9, 2012. *See* PageID.250, 295. In this regard, Exhibit 3F is identified in part as "Progress Notes Bipolar Type II (stable). . .", *see* PageID.294, and Dr. Mohammad specifically addressed this diagnosis in his opinion stating "[t]he diagnoses we have [for plaintiff] are Bi-Polar Disorder II, Attention Deficit Disorder and Obsessive Compulsive Disorder," *see* PageID.470.

It is unclear from the record why the ALJ failed to address the bipolar disorder. As discussed, when an ALJ finds one or more conditions to be severe impairments at step two, the

6

failure to identify another condition as a severe impairment is legally irrelevant, because the ALJ is required to consider the limiting effects of all impairments, "even those that are not severe", in crafting the RFC. Thus, the ALJ's failure to identify the bipolar disorder as a severe impairment is not, in and of itself, an error requiring reversal. However, in this case, the Court concludes that the ALJ erred by failing to consider the effects of this non-severe impairment in crafting the RFC. When the ALJ proceeded to step three, he evaluated plaintiff's condition under Listings 12.06 ("Anxiety and obsessive-compulsive disorders") and 12.08 ("Personality and impulse-control disorders"). PageID.49-50. However, even though plaintiff was diagnosed and treated for bipolar disorder, the ALJ does not explain why he did not address this condition under Listing 12.04 ("Depressive, bipolar and related disorders").

Because the ALJ failed to address the bipolar disorder, it is not clear from the record whether he considered the effects of this non-severe impairment in crafting the RFC. *See, e.g., Pruitt v. Commissioner of Social Security*, No. 14-CV-11230, 2015 WL 5730023 at *5 (E.D. Mich. Aug. 24, 2015), R&R *adopted*, 2015 WL 5697633 (E.D. Mich. Sept. 29, 2015) (where the ALJ found that the plaintiff had non-severe impairments including HIV, but made no reference to the listings relevant to HIV or the other non-severe impairments in the step-three analysis, the court remanded the case, noting that "[w]ithout an adequate discussion from the ALJ, it is not clear whether she considered Plaintiff's HIV at step three of the sequential evaluation process."). Similarly, it is not clear to the Court in this case as to whether the ALJ considered the bipolar disorder.

The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at 534-35, an ALJ "must articulate, at some

minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely helpful for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985) (internal quotation marks omitted). Accordingly, this matter should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should address the limiting effects, if any, of plaintiff's bipolar disorder and adjust her RFC accordingly.

> **B. The ALJ failed to give proper weight to the findings and opinion of plaintiff's treating psychiatrist, as required by 20 C.F.R. §404.1527(c).**
>
> **1. Substantial evidence does not support the ALJ's finding that Dr. Mohammad's opinion was only entitled to "limited" weight.**
>
> **2. The ALJ failed to properly consider the factors required by 20 C.F.R. 404.1527(c).**
>
> **3. Had the ALJ given proper weight to Dr. Mohammad's opinion and properly considered the record as a whole, he would have found that plaintiff met Listing 12.04.**

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has

examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §404.1527(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record. *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013); 20 C.F.R. §404.1527(c)(2). Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source. *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §404.1527(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed Dr. Mohammad's treatment and opinions as follows:

> The record also reflects the claimant's mental impairments. The record reflects the claimant's treatment by Niaz Mohammad, M.D. (Exhibit 1F; 3F; 5F). However, the record reflects mental status examinations within normal limits where the claimant makes good eye contact, exhibits intact memory and abstract thinking, fair insight and judgment, and no abnormal activity (Exhibit 1F; 3F: 5F). While the claimant's mood and affect have been noted to be anxious, the claimant has not required inpatient psychiatric treatment or more than conservative care consisting mostly of medication management. While the claimant testified she needs help caring for her children due to her impairments including her anxiety and attention deficit hyperactivity disorder, the record does not support they are severe enough where they preclude her from being able to engage in all work activity. . . .

In February 2016, treating psychiatrist, Niaz Mohammad, M.D., completed a mental residual functional capacity assessment of the claimant (Exhibit 7F). Dr. Mohammad opined the claimant was unable to meet competitive standards in many areas needed to do unskilled work including, maintaining attention for a two hour segment; maintain regular attendance and be punctual within customary, usually strict tolerances; complete a normal workday and workweek without interruptions form [sic] psychologically based symptoms; and perform at a consistent pace without an unreasonable number and length of rest periods. However, Dr. Mohammad opined the claimant is limited but can satisfactorily remember work-like procedures, understand, remember and carry out very short and simple instructions; sustain an ordinary routine without special supervision; make simple work-related decisions; ask simple questions or request assistance; and accept instructions and respond appropriately to criticism from supervisors. Dr. Mohammad added the claimant would be absent about four day per month (Exhibit 7F). To supplement this mental residual functional capacity assessment, Dr. Mohammd [sic] signed a statement that he does "not endorse work for (the claimant) as (he) thinks it will be harmful for her at least at this time." Dr. Mohammad also stated he had told the claimant during a session in November 2013, "right now you are not stable enough to go back to work" (Exhibit 8F).

The undersigned assigns limited weight to Dr. Mohammad's opinion as it is not supported by his own progress notes or the record as a whole. The session he refers to where she is not stable to go back to work does not indicate she was unstable and rather "thing [sic] have been going well" and she was engaged, made good eye contact, and her memory and abstract were within normal limits (Exhibit 3F/15). Moreover, Dr. Mohammad's opinion focuses on the claimant's mood issues, but the claimant did not testify to that respect. Rather, she focused on her thyroid and distractibility, which progress notes and the medical evidence do not support. Moreover, the claimant, despite her alleged ear infection at the time, followed along well, answering all questions without being distracted, anxious, or at all tangential. While Dr. Mohammad has been the claimant's treating psychiatrist, his opinion is not assigned controlling weight, as it is not supported by the medical evidence. Rather, his progress notes are overwhelmingly within normal limits and without notation or indication that she is unable to perform work activity. Accordingly, the undersigned assigns Dr. Mohammad's opinion limited weight.

The claimant was assigned Global Assessment of Functioning ("GAF") scores of 40 to 50 after progress notes from Dr. Mohammad (Exhibit 1F; 3F; 5F). GAF scores in general are of limited evidentiary value. These subjectively assessed scores reveal only snapshots of impaired and improved behavior, state nothing in terms of function-by-function capacity or limitations, and do not provide a reliable longitudinal picture of the claimant's mental functioning. The undersigned gives more weight to the objective details and chronology of the record, which more accurately describe the claimant's impairments and limitations. Moreover, the assigned GAF scores do not coincide with the progress notes, which reflect the claimant's mental status examinations were within normal limits. For these reasons,

the undersigned gives little weight to the GAF scores documented in the treatment records.

PageID.51-53.

Although Dr. Mohammad specifically diagnosed plaintiff with bipolar disorder, the ALJ did not address the effects of this condition in evaluating the doctor's opinions. While it is unnecessary for the ALJ to address every piece of medical evidence (which in some cases span hundreds of pages), he needs to summarize the plaintiff's medical history in sufficient detail for the Court to understand the ALJ's reasoning. *See Hurst*, 753 F.2d at 519; *Diaz*, 55 F.3d at 307. Here, the administrative record includes over 70 pages of treatment notes from Dr. Mohammad (Exhibits 1F, 3F and 5F), as well as seven pages of opinions in two medical source statements (Exhibits 7F and 8F). The ALJ's cryptic summaries of the treatment notes and opinions are not sufficiently detailed to allow the Court to trace his reasoning. Accordingly, the matter will be reversed and remanded on this basis as well. On remand, the Commissioner should re-evaluate Dr. Mohammad's treatment notes and determine whether plaintiff met the requirements of Listing 12.04.

> **C. The ALJ's RFC findings are otherwise not supported by substantial evidence under 20 C.F.R. § 404.1545 and SSR 98-6p.**[1]
>
> **1. The ALJ did not use the proper standards in addressing Dr. Mohammad's opinion.**

RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. It is defined as "the maximum degree to which

---

[1] The Court notes that the statement of error cites 20 C.F.R. §§ 416.920 and 416.845, while the argument portion of the brief cites 20 C.F.R. § 404.1545. The Court also notes that some plaintiff's arguments do not correspond with the statement of errors.

the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c). The thrust of this alleged error is that the RFC is flawed because the ALJ's determination that Dr. Mohammad's opinions were not consistent with his treatment records was "practically void of any basis." Plaintiff's Brief (ECF No. 10, PageID.528). As discussed in § B, *supra*, this matter is being reversed and remanded because the Court could not follow the ALJ's reasoning, due in part to the ALJ's cryptic summaries of the doctor's treatment notes and opinions. Plaintiff's claim of error will be addressed on remand, when the Commissioner re-evaluates Dr. Mohammad's opinions, addresses the limitations of her bipolar disorder, and adjusts her RFC accordingly.

> **2. The ALJ failed to consider the effects of all plaintiff's impairments, including but not limited to her inability to sustain concentration, persistence or pace.**
>
> **3. Had the ALJ given proper weight to the treating physician's opinions, plaintiff would have been disabled based on the VE testimony.**

The ALJ acknowledged that plaintiff had some limitations in concentration, persistence and pace, by restricting her RFC "to simple work with one to two steps with occasional public contact and may not perform fast paced work." PageID.50. Plaintiff contends that the ALJ's determination was flawed because he failed to consider the effects of her non-severe impairments including bipolar disorder. Plaintiff's claims of error will be addressed on remand, when the Commissioner re-evaluates Dr. Mohammad's opinions, addresses the limitations of her bipolar disorder, and adjusts her RFC accordingly.

> **D.    The ALJ failed to give a proper hypothetical to the VE.**

Plaintiff's brief did not address this argument. Accordingly, this claim of error will be denied.

## IV. CONCLUSION

For these reasons, the Commissioner's decision will be **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner is directed to re-evaluate Dr. Mohammad's opinions, address the limiting effects of plaintiff's bipolar disorder, and adjust plaintiff's RFC accordingly. A judgment consistent with this opinion will be issued forthwith.


Dated: September 24, 2018 /s/ Ray Kent
United States Magistrate Judge